IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

TAMI BERNHEISEL         :
                        :
    Plaintiff,          :
                        :
v.                      :    3:13-CV-01496
                        :    (JUDGE MARIANI)
                        :
MARTIN MIKAYA, M.D., et al.  :
                        :
    Defendants.         :

## MEMORANDUM OPINION

### I. Procedural History

On December 26, 2013, Plaintiff, Tami Bernheisel, filed a Complaint against Defendant, Team Care, P.C., alleging Corporate Negligence (Count I) and Respondeat Superior (Count II). (See 3:13-cv-01496-RDM, Doc. 1). Plaintiff had previously commenced an action against Defendants Memorial Hospital, Memorial Hospital, Inc., and Martin Mikaya in June, 2013. (See 3:13-cv-1496). On February 3, 2014, the Court granted Plaintiff's motion to consolidate the two actions (3:13-cv-1496, Doc. 29) based on Plaintiff's representation that "the matters in both cases aris[e] out of the same and identical set of facts and circumstances regarding the medical care provided to" Bernheisel by Mikaya, Memorial Hospital, and Team Care (3:13-cv-1496, Doc. 26).

Presently before the Court is Defendant Team Care, P.C.'s Partial Motion to Dismiss and Motion to Strike Portions of Plaintiff's Complaint (Doc. 5), filed in case 3:13-cv-3092.

Because the two actions were consolidated prior to Plaintiff's response, Bernheisel's brief in opposition to Defendant's motion and Team Care's reply brief were both filed in case 3:13-cv-1496 (Docs. 40, 42).

The parties have fully briefed the motion, and it is ripe for decision. For the reasons set forth below, Defendant's partial motion to dismiss will be denied.

## II. Factual Allegations

Bernheisel's Complaint against Team Care alleges the following pertinent facts:

Defendant, Team Care, P.C., is a "corporation, association, partnership, and/or other business entity" and operates an emergency medical practice for the provision of medical services to the public. (Compl. Doc. 1, ¶ 2).

On or about December 26, 2011, Plaintiff was admitted to the Emergency Room of Memorial Hospital in Towanda, Pennsylvania, where she was examined by Martin Mikaya, M.D., President and agent of Team Care. (*Id.* at ¶ 4). Mikaya diagnosed Bernheisel with acute right otitis media and acute cellulitis of the right ear lobe and prescribed her an antibiotic. (*Id.*). Two days later, Bernheisel was readmitted to the Emergency Room of Memorial Hospital where Mikaya again examined her and diagnosed her with Bells Palsy and cellulitis of the right ear lobe. (*Id.* at ¶ 5). He also made a note to consider herpes zoster. (*Id.*). At this time, Mikaya prescribed Plaintiff an oral corticosteroid and Tylenol #3 but did not give her any anti-viral medication. (*Id.* at ¶ 6).

On or about January 11, 2012, Bernheisel was diagnosed with herpes zoster and later also diagnosed with Ramsey-Hunt syndrome as a result of the herpes zoster infection. (Doc. 1, ¶ 7). Plaintiff now alleges that Team Care's negligence has caused her to suffer "from a variety of physical symptoms, including, but not limited to, seventh nerve palsy, facial pain, hearing loss, loss of coordination, tinnitus, vertigo, and truncal ataxia." (*Id.* at ¶ 8).

### III. Standard of Review

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those

facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## IV. Analysis

Defendant's motion requests that the Court dismiss Plaintiff's claim of corporate negligence (Count I) and strike the paragraphs relating to this claim because, under Pennsylvania law, "as a non-hospital, non-nursing home, non-HMO or non-prison health care services vendor, [Team Care] cannot be held liable" under a theory of corporate negligence. (Doc. 6, at 3).

> Corporate negligence is a doctrine under which the hospital is liable if it fails to uphold the proper standard of care owed the patient, which is to ensure the patient's safety and well-being while at the hospital. This theory of liability creates a nondelegable duty which the hospital owes directly to a patient. Therefore, an injured party does not have to rely on and establish the negligence of a third party.

*Thompson v. Nason Hosp.*, 591 A.2d 703, 707 (Pa. 1991). In adopting the doctrine of corporate negligence, *Thompson* also "fully embrace[d]" the four categories of a hospital's duties.[1] *Id.* at 708. The theory of corporate negligence has been extended to apply to HMOs[2] and prison health care service providers[3]. However, Pennsylvania Courts have declined to extend this doctrine to entities such as a physician's office.[4]

---

[1] These four categories, which have been heavily relied on by Pennsylvania state courts since *Thompson* in determining whether a claim of corporate negligence is appropriate, are "(1) a duty to use reasonable care in the maintenance of safe and adequate facilities and equipment; (2) a duty to select and retain only competent physicians; (3) a duty to oversee all persons who practice medicine within its walls as to patient care; and (4) a duty to formulate, adopt and enforce adequate rules and policies to ensure quality care for the patients." *Thompson*, 591 A.2d at 707 (internal citations omitted).

[2] *See Shannon v. McNulty*, 718 A.2d 828, 835 (Pa. Super. 1998) ("[The Court] recognize[s] the central role played by HMOs in the total health care of its subscribers. . . . Specifically, while these providers do not practice medicine, they do involve themselves daily in decisions affecting their subscriber's medical care. These decisions may, among others, limit the length of hospital stays, restrict the use of specialists, prohibit or limit post hospital care, restrict access to therapy, or prevent rendering of emergency room care. . . . [W]hen decisions are made to limit a subscriber's access to treatment, that decision must pass the test of medical reasonableness. To hold otherwise would be to deny the true effect of the provider's actions, namely, dictating and directing the subscriber's medical care.").

[3] *See Wheeler v. Prison Health Servs., Inc.*, 2010 WL 3489405, at *7 (E.D. Pa. 2010) ("Considering decisions of the intermediate Pennsylvania courts, and the well-reasoned opinions of courts in the Eastern District, *Fox v. Horn*, No. 98–5279, 2000 WL 49374, at *8 (E.D.Pa. Jan.21, 2000) and *Zheng v. Palakovich*, No. 09–1028, 2010 WL 1508521, at *7 (M.D.Pa. Apr.13, 2010) (allowing claim for corporate negligence against MHM Correctional Services, Inc., a private company providing mental health services to SCI–Smithfield), this court finds the Pennsylvania Supreme Court would extend corporate negligence to an institution responsible for an inmate's healthcare").

[4] *See Sutherland v. Monongahela Valley Hosp.*, 856 A.2d 55, 61-62 (Pa. Super. 2004) ("[T]he policy considerations underlying the Pennsylvania Supreme Court's creation of the theory of corporate

5

Nonetheless, a physicians' group may be liable for corporate negligence. In *Hyrcza v. West Penn Allegheny Health System, Inc*, 978 A.2d 961 (Pa. Super. 2009), the Superior Court of Pennsylvania held that corporate liability may extend to medical professional corporations. The Court upheld the lower court's decision at trial to charge the jury on Defendant's alleged corporate negligence, finding that Defendant ChoiceCare, a physicians group, "was a comprehensive health care provider with the 'responsibility for arranging and coordinating the total health care of its patients,' and was involved in daily decisions affecting its patients' medical care." *Hyrcza*, 978 A.2d at 983 (*citing Thompson*, 591 A.2d at 706; *Shannon v. McNulty*, 718 A.2d 828, 835 (Pa. Super. 1998)). In so holding, the Court took into consideration the following findings by the trial court:

> ChoiceCare is a professional corporation comprised of doctors with many specialties including internal medicine, family medicine and occupational medicine. Suburban General [Hospital] contracted with ChoiceCare to provide medical care to patients admitted into the Rehabilitation Unit. The Rehabilitation Unit is administratively separate from the other units at Suburban General. ChoiceCare oversaw and ran the Rehabilitation Unit at Suburban General, assuming responsibility for the coordination and management of all patients. A patient admitted to the Rehabilitation Unit was assigned to a ChoiceCare physician who served as that patient's attending physician and who saw and coordinated the patient's care. ChoiceCare physicians establish a rehab program setting forth the various physical therapy regimens. They impanel a team of therapists to carry out the special therapies, and retain a nutritionist to participate in the patient's care. It is their responsibility to make sure that the other physicians are consulted and become involved in medical treatment as needed. ChoiceCare arranged and coordinated the total health care for its patients in the Rehabilitation Unit.

---

liability for hospitals are not present in the situation of a physician's office. In *Thompson*, the Supreme Court recognized that '[t]he corporate hospital of today has assumed the role of a comprehensive health center with responsibility for arranging and coordinating the total health care of its patients.' The same cannot be said for a physician's practice group.") (internal citation omitted).

> ChoiceCare was responsible for all of the medical care of patients in the Rehab Unit. There was testimony from physicians affiliated with ChoiceCare that the corporation had all the duties of a hospital under *Thompson* except the duty to use reasonable care in the maintenance of safe and adequate facilities and equipment.

*Id.* at 982-983 (quoting Trial Court Opinion, 5/8/08, at 17-18).

Relying on *Hyrcza*, Plaintiff argues that Team Care is a professional corporation as opposed to a physician's office and therefore can be held liable for corporate negligence because it had "the total responsibility for the coordination of care within Memorial Hospital's emergency department." (Doc. 40, at 2-3). Plaintiff's allegations, when taken as true, minimally support this contention. Bernheisel's complaint states that (1) Defendant "is a corporation, association, partnership, and/or other business entity organized and existing under the laws of the Commonwealth of Pennsylvania . . . and at all times mentioned herein was in the business of operating an emergency medical practice for the provision of medical services to the public"; and (2) Mikaya was the President, agent and servant of Defendant. (Doc. 1, ¶¶ 2, 4, 11). Furthermore, the complaint alleges that Team Care is liable for corporate negligence in light of the following failures:

> (a) in failing to properly and adequately staff the Emergency Room at Memorial Hospital;
> (b) in failing to properly formulate, adopt and enforce adequate policies, procedures and protocols in the Emergency Room at Memorial Hospital;
> (c) in failing to use reasonable care in the maintenance of safe and adequate facilities, equipment, medications and personnel;
> (d) in failing to select and retain only competent employees and physicians;
> (e) in failing to have an adequate referral network for medical emergencies

(*Id.* at ¶ 11). From this, the Court can reasonably infer that Plaintiff is alleging Team Care had a duty to perform these tasks. Therefore, taking these factual statements as true, Plaintiff has sufficiently alleged that Team Care may be "a comprehensive health care provider with the 'responsibility for arranging and coordinating the total health care of its patients,' and was involved in daily decisions affecting its patients' medical care", *Hyrcza*, 978 A.2d at 983.

Defendant refutes the failures alleged by Plaintiff and contests the appropriateness of Plaintiff's analogy of Team Care to ChoiceCare, relying heavily on Dr. Mikaya's deposition testimony taken in December 2013. (*See generally*, Doc. 42). While Defendant's arguments do appear to contradict at least some of Plaintiff's factual statements, and may actually differentiate Team Care and ChoiceCare, the Court declines to take them into consideration. "[W]here there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly*, 706 F.3d at 212. Taking Mikaya's deposition into account at this stage in the proceedings impermissibly requires the Court to look outside of the four corners of the complaint and consider matters outside the pleadings. *See Tri3 Enterprises, LLC v. Aetna, Inc.*, 535 Fed.Appx. 192, 195 (3d Cir. 2013) ("Unless the court converts a motion to dismiss into a motion for summary judgment, it is generally confined to the four corners of the complaint when evaluating its sufficiency") (citing *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir.1992)). Therefore, while there is a serious question in the Court's

mind as to whether Plaintiff can establish that Team Care is a "comprehensive health care provider" such that a claim for corporate negligence would be proper, such an issue is better resolved on summary judgment.

## V. Conclusion

For the foregoing reasons, Defendant's motion to dismiss Count I and to strike all associated paragraphs (Doc. 5) will be denied. A separate Order follows.

*[signature]*

Robert D. Mariani
United States District Judge