**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| TAMI BERNHEISEL | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : 3:13-CV-01496 |
| | : (JUDGE MARIANI) |
| | : |
| MARTIN MIKAYA, M.D., et al. | : |
| | : |
| Defendants. | : |

## OPINION AND ORDER

### I.   Introduction

Presently before the Court is Defendants' Motion to Dismiss Pursuant to Fed.R.Civ.P

12(b)(1) (Doc. 95) to which Plaintiff has filed a response and brief in opposition (Docs. 102,

103). The parties have fully briefed the motion, and it is ripe for decision. However, for the

reasons set forth below, the Court deems it necessary to hold an evidentiary hearing, which

shall also include oral argument, on the motion prior to issuing a decision.

### II. Procedural History

On June 4, 2013, Plaintiff, Tami Bernheisel, commenced an action against

Defendants Memorial Hospital, Memorial Hospital, Inc., and Martin Mikaya. (Doc. 1).

Plaintiff subsequently filed a separate action against Defendant, Team Care, P.C., on

December 26, 2013. (See 3:13-cv-3092-RDM, Doc. 1). On February 3, 2014, the Court

granted Plaintiff's motion to consolidate the two actions (Doc. 29) based on Plaintiff's

representation that "the matters in both cases aris[e] out of the same and identical set of

facts and circumstances regarding the medical care provided to" Bernheisel by Mikaya,

Memorial Hospital, and Team Care (Doc. 26).

### III. Standard of Review

"Federal courts are courts of limited jurisdiction. They possess only that power

authorized by Constitution and statute, which is not to be expanded by judicial decree."

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d

391 (1994) (internal citations omitted).

> [T]he federal courts are without power to adjudicate the substantive claims in
> a lawsuit, absent a firm bedrock of jurisdiction. When the foundation of federal
> authority is, in a particular instance, open to question, it is incumbent upon the
> courts to resolve such doubts, one way or the other, before proceeding to a
> disposition of the merits.

*Carlsberg Res. Corp. v. Cambria Sav. & Loan Ass'n*, 554 F.2d 1254, 1256 (3d Cir. 1977).

The instant case implicates one of the firmest bases for federal jurisdiction:

jurisdiction by diversity of citizenship. *Cf. Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 67-68, 117

S.Ct. 467, 136 L.Ed.2d 437 (1996) ("The Constitution provides, in Article III, § 2, that '[t]he

judicial power [of the United States] shall extend . . . to Controversies . . . between Citizens

of different States.' Commencing with the Judiciary Act of 1789 . . . Congress has constantly

authorized the federal courts to exercise jurisdiction based on the diverse citizenship of

parties."). The current version of the general diversity statute provides that "[t]he district

courts shall have original jurisdiction of all civil actions where the matter in controversy

2

exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . .

citizens of different states . . . ." 28 U.S.C. § 1332(a)(1).

A Motion to Dismiss for lack of subject-matter jurisdiction is properly made under

Federal Rule of Civil Procedure 12(b)(1) when a party believes that no diversity of

citizenship exists. "A district court has to first determine, however, whether a Rule 12(b)(1)

motion presents a 'facial' attack or a 'factual' attack on the claim at issue, because that

distinction determines how the pleading must be reviewed." *Constitution Party of Pa. v.*

*Aichele*, 757 F.3d 347, 357 (3d Cir. 2014).

> A facial attack, as the adjective indicates, is an argument that considers a
> claim on its face and asserts that it is insufficient to invoke the subject matter
> jurisdiction of the court because, for example, it does not present a question
> of federal law, or because there is no indication of a diversity of citizenship
> among the parties, or because some other jurisdictional defect is present.
> Such an attack can occur before the moving party has filed an answer or
> otherwise contested the factual allegations of the complaint. A factual attack,
> on the other hand, is an argument that there is no subject matter jurisdiction
> because the facts of the case—and here the District Court may look beyond
> the pleadings to ascertain the facts—do not support the asserted jurisdiction.
> So, for example, while diversity of citizenship might have been adequately
> pleaded by the plaintiff, the defendant can submit proof that, in fact, diversity
> is lacking.

*Id.* at 358.

In the case before us, the Complaints adequately plead diversity of citizenship. (*See*

Am. Compl., Doc. 25, ¶¶ 1-3 (alleging that Plaintiff is an adult individual residing in, and a

citizen of, North Carolina; that Defendant Mikaya is an adult individual and citizen of

Pennsylvania; and that Memorial Hospital, Inc. t/a Memorial Hospital is a corporation,

3

association, partnership, and/or other business entity organized and existing under the laws of Pennsylvania and regarded as a citizen of Pennsylvania); Compl., Doc. 1 (3:13-cv-3092), ¶¶ 1-2 (alleging that Plaintiff is an adult individual residing in, and a citizen of, North Carolina and that Defendant Team Care, P.C. is a corporation, association, partnership, and/or other business entity organized and existing under the laws of Pennsylvania and regarded as a citizen of Pennsylvania)). Defendants merely claim that, whatever the allegations of the Complaints may be, Plaintiff was in fact a Pennsylvania citizen and resident. The Motion therefore presents a clear factual attack on the Complaints, and shall be evaluated accordingly.

In considering a factual attack on subject-matter jurisdiction, "the court may consider evidence outside the pleadings." *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). Moreover, "the burden of establishing the [existence of subject-matter jurisdiction] rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 377 (internal citations omitted). This is because, since the federal courts' jurisdiction is strictly limited by Constitution and statute, "[i]t is to be presumed that a cause lies outside this limited jurisdiction." *Id.*

Finally, the Federal Rules of Civil Procedure provide that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed.R. Civ.P. 12(h)(3). "The objection that a federal court lacks subject-matter jurisdiction may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after

4

trial and the entry of judgment." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506, 126 S.Ct. 1235, 163 L. Ed. 2d 1097 (2006). "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514, 19 L.Ed. 264 (1868). This rule "'springs from the nature and limits of the judicial power of the United States' and 'is inflexible and without exception.'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (quoting *Mansfield, C. & L. M. Ry. Co. v. Swan*, 111 U.S. 379, 382, 4 S.Ct. 510, 28 L. Ed. 462 (1884)).

## IV. Analysis

Because the relevant time for determining the status of a party's citizenship for the purpose of establishing diversity of citizenship is at the time the action is filed, at issue before the Court is Bernheisel's citizenship in 2013. *See Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 570-571, 124 S.Ct. 1920, 158 L.Ed.2d 866 (2004) ("It has long been the case that the jurisdiction of the court depends upon the state of things at the time of the action brought. . . . [This rule] measures all challenges to subject-matter jurisdiction premised upon diversity of citizenship against the state of facts that existed at the time of filing - whether the challenge be brought shortly after filing, after the trial, or even for the first time on appeal.") (internal quotations and citations omitted). Events subsequent to the filing of an action, such as a change in a party's citizenship, do not defeat diversity jurisdiction if

5

such jurisdiction existed at the commencement of the case. *See Smith v. Sperling*, 354

U.S. 91, 93 n.1, 77 S.Ct. 1112, 1 L.Ed.2d 1205 (1957) (noting that "jurisdiction, once

attached, is not impaired by a party's later change of domicile."). As the party asserting

jurisdiction, Plaintiff bears the burden of proving the presence of diversity of citizenship by a

preponderance of the evidence. *McCann v. Newman Irrevocable Trust*, 458 F.3d 281, 286

(3d Cir. 2006). However, under applicable law, Defendants in this case are not without their

own burden in their effort to show a change of domicile by Plaintiff. The Court in

*Washington v. Hovensa* described this "heavier burden" as "'shifting to . . . [the] party [that

bears it] the burden of production regarding the change of domicile, not raising the standard

of proof.' When the party 'claiming a new domicile is the opponent of federal jurisdiction' . . .

it 'bears the initial burden of producing sufficient evidence to rebut the presumption in favor

of the established domicile.'" 652 F.3d 340, 345 (3d Cir. 2011) (quoting *McCann*, 458 F.3d

at 287 n.3, 288).

To establish citizenship within the meaning of § 1332, "a natural person must both be

a citizen of the United States *and* be domiciled within the State." *Newman-Green, Inc. v.

Alfonzo-Larrain*, 490 U.S. 826, 828, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989) (emphasis in

original).

> Citizenship is synonymous with domicile, and "the domicile of an individual is
> his true, fixed and permanent home and place of habitation. It is the place to
> which, whenever he is absent, he has the intention of returning." *Vlandis v.
> Kline*, 412 U.S. 441, 454, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973). In determining
> an individual's domicile, a court considers several factors, including
> "declarations, exercise of political rights, payment of personal taxes, house of

6

residence, and place of business." *Krasnov* [*v. Dinan*, 465 F.2d 1298, 1301 (3d Cir. 1972)] (quotation omitted). Other factors to be considered may include location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, and driver's license and vehicle registration. 13B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 3612 (3d ed.2005).

*McCann*, 458 F.3d at 286. "[A] domicile once acquired is presumed to continue until it is shown to have been changed. This principle gives rise to a presumption favoring an established domicile over a new one." *Id*. at 286-287 (internal quotation marks and citations omitted).

In support of their motion, Defendants submitted small portions of the deposition testimony of Tami Bernheisel, Plaintiff's sons John Bernheisel. Jr. and Dillon Bernheisel, and Plaintiff's friend Richard Ross, with whom Plaintiff currently resides in Pennsylvania. Defendants also submitted a newspaper article indicating that Plaintiff obtained property in Bradford County, Pennsylvania in approximately October of 2011, records showing that Plaintiff later conveyed this property to another individual in 2014, and documents regarding ongoing bankruptcy proceedings since 2011 in the Eastern District of North Carolina. None of these documents provide much support for Defendants' arguments. The submitted portions of the deposition transcripts are so brief as to largely prevent the Court from determining what year or time frame is being discussed by the deponents and the context of their testimony. The depositions also do not lend any direct support to Defendants' arguments that Plaintiff was domiciled in Pennsylvania in 2013 or that she did not have any intention to return to North Carolina at any time in which she was in a different state. The

fact that Plaintiff owned property in Pennsylvania in 2013, without evidence that she ever lived on this property for any period of time or had the intention of doing so, is meaningless. *See* 4 Moore's Federal Rules Pamphlet § 1332.4(2)(a) (Matthew Bender) ("A person is deemed to have one, and only one domicile at all times. Thus, for purposes of diversity of citizenship, a citizen has only once domicile, regardless of the number of residences maintained."). Furthermore, a review of the docket sheet for the bankruptcy proceedings show that Plaintiff had a North Carolina address until December, 2013, when it changed to Virginia, and then April, 2014, when she requested that her address be updated to one in Pennsylvania, therefore defeating any support for the argument that Plaintiff was not a resident of North Carolina at the time she first filed her action.

Nonetheless, while Defendants' exhibits are far from persuasive, because the Plaintiff bears the burden of establishing diversity of citizenship, she must have come forward with some evidence showing that she was domiciled in North Carolina at the time of the filing of the Complaint. Plaintiff's exhibits include an Affidavit of Tami Bernheisel; income tax returns for the 2014 calendar year; North Carolina Medicaid Identification Cards issued to Plaintiff on August 19, 2014 and John Bernheisel on October 3, 2014; a letter from the Social Security Administration sent to Plaintiff's North Carolina address in November, 2014; North Carolina Registration Cards and accompanying receipts from the Division of Motor Vehicles ("DMV") from October, 2014, and May, 2015, which list a North Carolina address for Plaintiff; a DMV receipt and handicap placard dated July, 2012; and Calendar

Requests in the District Court for Brunswick County, North Carolina, requesting the

termination of alimony and child support, in both of which Plaintiff provides a North Carolina

address. Although Plaintiff's exhibits could lead this Court to extrapolate that she was

domiciled in North Carolina in 2013, Plaintiff inexplicably fails to submit any documentary

evidence of where she filed taxes, was registered to vote, had a driver's license, or

registered her vehicle in 2013, the time at which the Court must determine the location of

her domicile, as well as any other evidence that may be relevant in the Court's

determination. While Bernheisel's affidavit states that she has always intended "to return

permanently to North Carolina once [she is] financially able to do so", that "all of [her] ties

are with North Carolina", and that she has "from 2011 to the present always paid [her]

income taxes in North Carolina, because [she] consider[s herself] a resident of North

Carolina", this alone is not sufficient for Plaintiff to meet her burden and the Court can only

give minimal weight to this affidavit prior to the introduction of further evidence. Rather, at

an evidentiary hearing, Plaintiff will have to provide documentary evidence to support her

statements. *See Korn v. Korn*, 398 F.2d 689, 691 (3d Cir. 1968) ("One's testimony as to his

intention to establish a domicile, while entitled to full and fair consideration, is subject to the

infirmity of any self-serving declaration, and it cannot prevail to establish domicile when it is

contradicted or negatived by an inconsistent course of conduct; otherwise stated, actions

speak louder than words."); *Washington*, 652 F.3d at 346-347 (where Plaintiff owned a

home in Texas, had a Texas driver's license and registered her vehicle in that state, as well

as having a bank account and primary care doctor in Texas, her statement that she intended to return to, and reside in, Texas was buttressed, not contradicted, by her course of conduct at the time she filed her complaint.).

Both Plaintiff and Defendants focus almost exclusively on Bernheisel's location and domiciliary intentions beginning in 2014, but fail to provide sufficient evidence to aid this Court in determining whether Plaintiff was domiciled in North Carolina at the time of the filing of this action. Because the factual record currently before the Court is inadequate for the Court to make a jurisdictional determination, we will order an evidentiary hearing, which shall include oral argument, in this matter. At that time, Plaintiff is expected to sustain her burden of establishing that she was still domiciled in North Carolina in June, 2013. Likewise, and consistent with their burden described herein, *supra* at 6, Defendants will also be expected to present any evidence that they believe negate Plaintiff's claim that she was domiciled in North Carolina at the time in question, and that demonstrate that she had established a new domicile in Pennsylvania in 2013. The Court warns the parties that it is not interested in hearing more arguments regarding Plaintiff's actions in 2014 and 2015 and how this relates to her intent to remain in North Carolina, given that the question with respect to intent is what Plaintiff's domiciliary intentions were in 2013, not subsequent to this time.

## V. Conclusion

**AND NOW, THIS 22ND DAY OF OCTOBER, 2015, IT IS HEREBY ORDERED**

**THAT** an evidentiary hearing on Defendants' Motion to Dismiss Pursuant to Fed.R.Civ.P

12(b)(1) (Doc. 95) will be held on **Friday, November 20, 2015, at 1:30 p.m.**

Robert D. Mariani
United States District Judge